**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **MCLANE COMPANY, INC.,** | § | |
| | § | **Civil Action No. 6:17-cv-00166** |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **(Cause No. 293,263-C; 169th Judicial** |
| | § | **District Court of Bell County, Texas)** |
| **ASG TECHNOLOGIES GROUP, INC.** | § | |
| **F/K/A ALLEN SYSTEMS GROUP, INC.,** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **Defendant.** | § | |

**MCLANE COMPANY, INC.'S ORIGINAL ANSWER TO ASG TECHNOLOGIES**
**GROUP, INC. F/K/A ALLEN SYSTEM GROUP, INC.'S COUNTERCLAIM**

McLane Company, Inc. (hereinafter referred to as "McLane"), files its Original Answer to ASG Technologies Group, Inc. f/k/a Allen Systems Group, Inc.'s Counterclaim, and respectfully states:

**I. PARTIES**

1.     McLane admits that upon information and belief ASG Technologies, Inc. (hereineafter, "ASG") is a Delaware corporation with its principal place of business located in Naples, Florida.

2.     McLane admits the allegations in Paragraph 2.

**II. JURISDICTION AND VENUE**

3.     McLane admits the Court has jurisdiction over the parties and the subject matter of this lawsuit on the basis of diversity jurisdiction. McLane expressly denies that ASG's counterclaim arises under the common law and the laws of the State of Florida.  McLane further denies ASG's substantive claims and denies that ASG has been damaged.

4.     McLane admits the allegations in Paragraph 4.

### III. FACTS

5.      McLane admits that ASG develops and markets software products. McLane lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 5.

6.      McLane admits that ASG develops and markets software products. McLane lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 6.

7.      McLane lacks knowledge or information sufficient to form a belief about the allegation in Paragraph 7 that enterprise customers use ASG-ViewDirect to manage the long-term integrity and availability of all types of records and content. McLane admits the remaining allegations in Paragraph 7.

8.      McLane admits the allegations in Paragraph 8.

9.      McLane admits that, since at least 2002, it has licensed certain software from ASG, including the software at issue in this case. McLane lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 9.

10.      McLane lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 10.

11.      McLane admits it previously entered into a Software License Agreement with ASG, which, along with the parties' course of dealing over many years has governed the parties' business relationship. McLane lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 11.

12.      McLane admits the allegations in Paragraph 12.

13.      McLane admits the allegations in Paragraph 13.

14.     McLane admits that it signed "Exhibit C" to the 2003 Mobius Agreement in 2006. Additionally, McLane admits a copy of Exhibit "C" to the 2003 Mobius Agreement was attached to McLane's First Amended Complaint in this matter as Exhibit "D." McLane denies the remaining allegations in Paragraph 14.

15.     McLane admits Product Schedule #5 was signed by the parties in 2007. McLane admits Product Schedule #6 was signed by the parties in 2012. McLane additionally admits Product Schedule #5 and Product Schedule #6 were attached to McLane's Amended Complaint as Exhibits F and G, respectively. McLane expressly denies that Product Schedule #5 or Product Schedule #6 contained all of the terms of the parties' agreements regarding the software licensed to McLane by ASG exclusive of the parties' prior course of dealing. Additionally, McLane asserts Product Schedule #5, Product Schedule #6, and the parties' Software License Agreement signed in 2002 are ambiguous. Further, McLane has pled in the alternative  and asserts that ASG misrepresented the substance of the terms described in Product Schedule #5 and in Product Schedule #6 in an effort to fraudulently induce McLane's agreement to terms that differed from the parties' prior course of dealing.

16.     McLane admits that Product Schedule #6 contains the provision quoted in Paragraph 16.

17.     McLane admits Exhibits B and C to the 2003 Mobius Agreement permitted McLane to permit its external customers to access and use the DocumentDirect software. McLane denies such software was called ASG-DocumentDirect at that time, as, upon information and belief, ASG had not yet acquired Mobius Management Systems, Inc. McLane expressly denies subsequent renewals of McLane's licenses to the ASG-DocumentDirect products included different terms regarding McLane's permission to allow its external customers

to access and use the DocumentDirect software.

18.     McLane denies that Product Schedule #5 did not allow its external customers to access and use ASG-DocumentDirect and ASG-ViewDirect software. McLane asserts ASG misrepresented the substance of the terms described in Product Schedule #5 in an effort to fraudulently induce McLane's agreement to terms that differed from the parties' prior course of dealing. Specifically, ASG represented to McLane that the terms regarding McLane's customers' access and use of ASG-DocumentDirect and ASG-ViewDirect had not changed and would be "business as usual." McLane asserts that it relied on those misrepresentations and its prior course of dealing with ASG to its detriment.

19.     McLane denies that Product Schedule #6 did not allow its external customers to access and use ASG-DocumentDirect and ASG-ViewDirect software. McLane asserts ASG misrepresented the substance of the terms described in Product Schedule #6 in an effort to fraudulently induce McLane's agreement to terms that differed from the parties' prior course of dealing. Specifically, ASG represented to McLane that the terms regarding McLane's customers' access and use of ASG-DocumentDirect and ASG-ViewDirect had not changed and would be "business as usual." McLane asserts it relied on those misrepresentations and its prior course of dealing with ASG to its detriment.

20.     McLane denies that the terms of Product Schedule #5 and Product Schedule #6 as represented by ASG were negotiated by the parties. McLane relied upon the representations made by ASG regarding the substance of the terms of Product Schedule #5 and Product Schedule #6. More specifically, McLane relied on ASG's misrepresentations that Product Schedule #5 and Product Schedule #6 were simply the continuation of "business as usual" and made no substantive changes to their prior course of dealing. McLane admits that both parties signed

Product Schedule #5 and Product Schedule #6.

21.    McLane denies the allegations in Paragraph 21.

22.    McLane admits that the agreements of the parties, including their course of dealing, imposed obligations on both McLane and ASG. Otherwise, McLane denies the allegations in Paragraph 22. McLane expressly denies there was any deviation from the licensed usage for McLane to report to ASG.

23.    McLane admits the language quote in Paragraph 23 can be found in the 2002 Software Licensing Agreement.

24.    McLane admits the allegations in Paragraph 24.

25.    McLane admits that it stated that approximately 300 customers utilized some software licensed from ASG in response to a questionnaire provided by ASG in anticipation of the "Health Check." McLane has since determined and admits that the number of customers accessing their reports through the ASG-DocumentDirect for the Internet 4.6.0 software was approximately 97 customers, and not 300. McLane denies that any customers or other third-parties accessed or used ASG-ViewDirect for MVS version 6.6 as alleged in Paragraph 25. McLane denies that any customers or other third-parties accessed or used ASG-ViewDirect for Networks version 4.4 on Windows as alleged in Paragraph 25. McLane denies that any customers or other third-parties accessed or used ASG-DocumentDirect version 4.4.2 as alleged in Paragraph 25.

26.    McLane admits that ASG provided a report that asserts the allegations in Paragraph 26. However, McLane denies that it was not in compliance with the parties' agreements and prior course of dealing since at least 2002.

27.    McLane admits that ASG previously demanded that McLane pay certain fees to

renew and/or resolve ASG's claim regarding the use of the software by McLane's customers. However, McLane denies that it was not in compliance with the parties' agreements and prior course of dealing since at least 2002.

28.     McLane admits the allegations in Paragraph 28.

29.     McLane expressly denies that it conceded that the express terms of at least Product Schedule #6 do not permit McLane to provide use of or access to the ASG software by McLane's external customers. McLane admits that since March of this year, it has attempted in good faith to find a possible resolution of the disputes between it and ASG, and that the parties have been unable to reach a resolution of such disputes. McLane denies that it has breached any agreement with ASG, including the 2002 Software Licensing Agreement, Product Schedule #5, and Product Schedule #6. McLane lacks sufficient knowledge or information to form a belief about the truth of the allegations regarding ASG's opinion regarding the amount it believes it is owed by McLane. McLane denies that ASG has been damaged in any amount.

30.     McLane admits that ASG sent a letter to Eric Hildenbrand providing formal notice of McLane's alleged breach of the 2002 Software Licensing Agreement, as amended by Product Schedules #5 and #6, and stating that McLane had sixty days to cure such alleged breach. McLane denies that it has breached any agreement with ASG, including the 2002 Software Licensing Agreement, Product Schedule #5, and Product Schedule #6.

31.     McLane denies the allegations in Paragraph 31.

### IV. FIRST CAUSE OF ACTION: BREACH OF CONTRACT

32.     McLane incorporates its answers to Paragraphs 1 – 31 as if stated in full.

33.     McLane denies the allegations in Paragraph 33.

34.     McLane admits that, since approximately 2002, it had access to and used some of

the software products it licensed from ASG and its predecessor, Mobius Management Systems, Inc. Otherwise, McLane denies the remaining allegations in Paragraph 34.

35.     McLane denies the allegations in Paragraph 35.

36.     McLane lacks sufficient knowledge or information to form a belief regarding nthe truth of the allegations regarding the applicability of the Copyright Act to the issues presented in this case. McLane denies the remaining allegations in Paragraph 36.

37.     McLane denies the allegations in Paragraph 37.

38.     McLane denies the allegations in Paragraph 38.

39.     McLane denies the allegations in Paragraph 39.

40.     McLane denies the allegations in Paragraph 40.

## V. ASG'S REQUEST FOR RELIEF

41.     McLane incorporates its answers to Paragraphs 1 – 40 as if stated in full.

42.     McLane denies ASG is entitled to judgment in favor of ASG and against McLane.

43.     McLane denies ASG is entitled to injunctive relief.

44.     McLane denies ASG is entitled to an award of damages.

45.     McLane denies ASG is entitled to an award of pre-judgment or post-judgment interest.

46.     McLane denies ASG is entitled to an award of its costs, including reasonable attorneys' fees.

47.     McLane denies ASG is entitled to any other or further relief at law or in equity.

## VI. AFFIRMATIVE DEFENSES

48.     McLane incorporates its answers to Paragraphs 1-47 as if stated in full. Additionally, McLane incorporates the facts alleged in its First Amended Complaint [Document

No. 17] as if stated in full.

49.     ASG's Counterclaim is barred, in whole or in part, for failure to state a claim upon which relief can be granted.

50.     ASG's Counterclaim is barred, in whole or in part, because it first breached its agreements with McLane. Throughout the parties' long-term course of dealing, the parties agreed that McLane's customers could access and use the DocumentDirect and ViewDirect software. As discussed in more detail in McLane's First Amended Complaint (incorporated herein by reference), beginning in March 2017 ASG demanded that McLane pay substantial, additional consideration to ASG retroactively for approximately ten years for the usage ASG previously agreed to permit, or else it would terminate McLane's software key for the licensed products. Such demands and threats of termination on ASG's part served as an anticipatory breach by ASG of the parties' agreements. Additionally and alternatively, certain of the software programs licensed by McLane from ASG did not perform as represented by ASG, and were not updated to continue to work correctly with other software that was necessary to fully utilize the applications. By way of example, ASG-DocumentDirect for the Internet stopped working for internal McLane users some time ago because it was not updated by ASG to work correctly with updated versions of Microsoft's Internet Explorer.

51.     ASG's Counterclaim is barred, in whole or in part, by estoppel. As detailed in McLane's First Amended Complaint (which is incorporated herein by reference), ASG made repeated misrepresentations to McLane throughout their course of dealing regarding McLane's customer's access to and use of the licensed products. McLane relied on those misrepresentations to its detriment. ASG should be precluded from now asserting a breach of contract by McLane based on McLane's reliance on ASG's misrepresentations. Additionally and alternatively, the

failure to enforce ASG's representations regarding "business as usual" that McLane relied on would result in an injustice. Additionally and alternatively, it would be unconscionable to allow ASG to take a position today that is contrary to the representations it made to McLane throughout their long-term course of dealing.

52.     ASG's Counterclaim is barred, in whole or in part, by fraud. As discussed in greater detail in McLane's First Amended Complaint (which is incorporated herein by reference), ASG made repeated misrepresentations to McLane regarding the substance of the terms of the renewals of their agreements in 2007 and 2012. ASG assured McLane that the renewals the parties entered into in 2007 and 2012, respectively, were simply "business as usual" and that the substance of the terms of the parties' agreements throughout their long-term course of dealing had not changed. This dispute is the result of ASG's misrepresentations to McLane, and ASG's Counterclaim should therefore be barred.

53.     ASG's Counterclaim is barred, in whole or in part, by the affirmative defense of license. As discussed above and in McLane's First Amended complaint (which is incorporated herein by reference), McLane's access to and use of the software products at issue, including its customer's access to and use of those software products, was licensed by ASG. Throughout their course of dealing, McLane's usage of the software products at issue was the subject of a license. ASG repeatedly represented to McLane that it would be permitted to grant access to and use of DocumentDirect and ViewDirect to its customers each time the licenses were renewed.

54.     ASG's Counterclaim is barred, in whole or in part, by the affirmative defense of waiver. ASG and McLane have had a business relationship since at least 2002. During that long-term course of dealing, ASG has been aware of McLane's long-standing use of the software products at issue in this lawsuit, including the use of DocumentDirect and ViewDirect by some

of McLane's customers to access reports produced by McLane. ASG has never before complained of such usage, and has misrepresented to McLane that such usage was permitted by the renewals signed in 2007 and 2012, respectively. It has therefore waived any right it may have had to enforce any contrary provisions found in Product Schedule #5 or Product Schedule #6.

55.     ASG's Counterclaim is barred, in whole or in part, by the affirmative defense of ratification. As detailed herein and in McLane's First Amended Complaint (which is incorporated herein by reference), ASG repeatedly represented to McLane at the time their agreements were formally renewed in 2007 and 2012 that it was simply "business as usual." Those misrepresentations and ASG's conduct throughout the parties' course of dealing served as ratifications of McLane's usage of the licensed software.

56.     Pleading in the alternative, ASG's Counterclaim is barred, in whole or in part, by the affirmative defense of mutual mistake. Without waiving its affirmative claims for relief or any of its other defenses, McLane would submit that it is possible both parties mistakenly believed that Product Schedule #5 and Product Schedule #6 did not materially alter the substance of their agreements throughout their course of dealing, including the agreements that McLane could permit up to 50 of its customers at a time to access and use DocumentDirect and ViewDirect.

57.     ASG's Counterclaim is barred, in whole or in part, by ambiguity. The terms of Product Schedule #6 regarding the use of the Licensed Products by McLane's customers are ambiguous and must include the parties' course of dealing. McLane has complied with the agreements (including the parties' course of dealing) in all material respects.

58.     ASG's Counterclaim is barred, in whole or in part, by the statute of limitations. ASG alleges that McLane first breached the parties' agreements in 2007. McLane denies any

breach occurred. However, should there be a finding to the contrary, the statute of limitations would bar any relief sought for breaches that occurred before 2013. Tex. Civ. Prac. & Rem. Code Sec. 16.051.

## VII. ATTORNEYS' FEES

59.     McLane respectfully requests that it be awarded its reasonable and necessary attorneys' fees expended in defense of ASG's Counterclaim pursuant to Texas Civil Practice and Remedies Code Section 38.001 and the Court's equitable powers.

## PRAYER

McLane Company, Inc., respectfully requests that ASG take nothing by its Counterclaim, and that it be awarded its taxable costs of Court and its reasonable and necessary attorneys' fees expended in defense of ASG's Counterclaim. McLane respectfully requests all such other and further relief to which it is entitled at law or in equity.

Respectfully submitted,

BAIRD, CREWS, SCHILLER & WHITAKER, P.C.

By:          /s/ Jack R. Crews
              _____
              **JACK R. CREWS**
              State Bar Card No.: 05072300
              Direct: (254) 743-7320
              Email: jackcrews@bcswlaw.com
              **KENNETH R. VALKA**
              State Bar Card No.: 20435300
              Direct: (254) 743-7350
              Email: kenvalka@bcswlaw.com
              **KEVIN K. BONNER**
              State Bar Card No.: 24069398
              Direct: (254) 743-7321
              Email: kevinbonner@bcswlaw.com
              15 North Main Street
              Temple, Texas 76501
              Fax: (254) 774-9353

ATTORNEYS FOR MCLANE COMPANY, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing McLane Company, Inc.'s Original Answer to ASG Technologies, Inc. f/k/a Allen System Group, Inc.'s Counterclaim has been electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record for Defendant:

| | |
|---|---|
| Martin R. Sadler | Via E-mail: msadler@lawla.com |
| Donna F. Thomisee | Via E-mail: dthomisee@lawla.com |
| Lugenbuhl, Wheaton, Peck, Rankin & Hubbard | |
| 801 Travis Street, Suite 1800 | |
| Houston, TX 77002 | |
| Fax: (713) 222-1996 | |

| | |
|---|---|
| Theresa H. Wang | Via E-mail: thw@stokeslaw.com |
| Shannon M. Jost | Via E-mail: smj@stokeslaw.com |
| Stokes Lawrence, P.S. | |
| 1420 Fifth Avenue, Suite 3000 | |
| Seattle, WA 98101 | |
| Fax: (206) 464-1496 | |

On this 28th day of July, 2017.

                                                 /s/ *Jack R. Crews*
                                                 JACK R. CREWS